IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BRENDA BOYD, Individually and as Personal Representative of the Estate of CALVIN BOYD, Deceased,<br>     Plaintiff, | § § § § § | |
| | § | CIVIL ACTION NO. 2:09-cv-00254 |
| v. | § § | |
| UNION PACIFIC CORPORATION and UNION PACIFIC RAILROAD COMPANY,<br>     Defendants. | § § § | |

## DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Defendant Union Pacific Railroad Company filing this Response and Memorandum in Opposition to Plaintiff's Motion for Sanctions, and would respectfully show the Court as follows:

### I.
### INTRODUCTION

1. Plaintiff is Brenda Boyd; Defendant is Union Pacific Railroad Company ("UPRR"). Union Pacific Corporation ("UPC") was recently dismissed with prejudice by the Plaintiff as it was not a proper party. *See* Order of Dismissal With Prejudice as to Defendant Union Pacific Corporation attached hereto as Exhibit "A" and incorporated herein by reference.

2. Plaintiff sued the Defendants, under the Federal Employers' Liability Act ("FELA"), alleging damages for the heart attack and death of her husband, Calvin Boyd. *See* Plaintiff's Original Complaint attached hereto as Exhibit "B" and incorporated herein by reference.

3. On March 10, 2011, Plaintiff's counsel sent a letter to Defense counsel requesting production of the following: (1) "Job Briefing Booklet", (2) "Union Pacific Safety Resource Manual", (3) "Union Pacific Training Record and File – for Mr. DeLeon and Mr. Tabor", and (4) "CPR training written material and PowerPoint presentation". Those documents were produced by Defendants on March 11, 14 and 18, 2011.

4. However, on March 17, 2011, Plaintiff filed a motion seeking sanctions, including dispositive sanctions, against Defendant UPRR for allegedly failing to timely produce a first aid/CPR training manual. *See* Plaintiff's Motion for Sanctions and Memorandum in Support attached hereto as Exhibit "C". Plaintiff's Motion addresses only the first aid/CPR training manual.

## II.
## ARGUMENT & AUTHORITIES

5. The purpose of sanctions is to (1) secure compliance with the rules of discovery, (2) deter others from violating the discovery rules, and (3) punish those who do violate them. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

6. Due process limits a court's power to impose discovery sanctions, and when considering sanctions, a court should ensure that any discovery sanction comports with due process. *See Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982). The sanctions imposed must have a direct relationship to the offensive conduct. *See Martin v. Brown*, 63 F.3d 1252, 1263-64 (3d Cir. 1995); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988).

7. Plaintiff now claims that the first aid CPR training manual is so "extremely relevant" to her pleaded claims that its alleged untimely production has materially prejudiced her ability to litigate this case. *See* Exhibit "C". Plaintiff's claims are without merit and the Court should deny Plaintiff's Motion for Sanctions as (1) Defendant UPRR was substantially justified in not producing it earlier, and (2) sanctions would be unjust. *See* Fed. R. Civ. P. 37(b),(c)(1); *Insurance Corp.*, 456 U.S. at 707.

### A. Plaintiff's Pleadings Did Not Give Notice

8. In addressing the merits of the Plaintiff's motion, Defendant must first address the validity of the Plaintiff's underlying assumption that the first aid CPR training manual is plainly relevant to the ***claims actually pled*** by the Plaintiff. Plaintiff's motion states that her Original Complaint alleged "...Defendant's employee, Tony DeLeon, was negligent in *failing to recognize symptoms and warning signs of a heart attack; failing to recognize a possible medical emergency*; and *failing to call 9-1-1 so that a fully equipped and staffed ambulance could have arrived at the scene within minutes and provide immediate care.*" *See* Exhibit "C" (emphasis added). However, Plaintiff's Original Complaint did not assert those allegations.

9. Despite Plaintiff's statements to the contrary, the claims actually pled in the Original Complaint were general in nature and alleged ***Defendant UPC***[1] was negligent by: "(a) violating the Federal Employers' Liability Act; (b) failing to provide CALVIN BOYD with adequate assistance to perform his assigned duties; (c) failing to provide CALVIN BOYD with appropriate and necessary medical care; and (d) in otherwise failing to use due care and caution under the circumstances." *See* Exhibit "B", at 3. Plaintiff's Original Complaint did not mention first aid or CPR training, and

---

[1] Union Pacific Railroad Company was not even a party at this time.

certainly did not include those allegations made in Plaintiff's Motion. The issues framed by Plaintiff's Original Complaint were whether it was quicker for Mr. DeLeon[2] to call an ambulance or take to Mr. Boyd to the hospital, and if the hospital, Marshall or Shreveport. *See* Exhibit "B". Accordingly, at the time of Plaintiff's Original Complaint, the claims actually pled gave no notice that ***Defendant UPRR's*** first aid or CPR training was a relevant issue.

10. Additionally, it is important to point out that Plaintiff's Original Complaint only named UPC as a defendant, and not UPRR. *See* Exhibit "B". Regardless, as evidence of the Defendants' good faith, Defendant UPC voluntarily disclosed in its Original Answer that UPRR, and not UPC, employed both Mr. Boyd and his co-workers, including Mr. DeLeon, and that UPRR was the correct party. *See* Defendant Union Pacific Corporation's Original Answer attached hereto as Exhibit "D" and incorporated herein by reference. Yet, despite this disclosure, the Plaintiff waited for almost a year, July 29, 2010, before filing a First Amended Complaint adding Defendant UPRR, and ultimately dismissed Defendant UPC with prejudice after realizing it was not a proper party. *See* Plaintiff's First Amended Complaint attached hereto as Exhibit "E" and Plaintiff's Motion to Dismiss With Prejudice as to Defendant Union Pacific Corporation attached hereto as Exhibit "F" and incorporated herein by reference. Prior to July 29, 2010, UPRR, the entity from whom Plaintiff seeks sanctions, was not even a party to this litigation. Accordingly, Plaintiff's statement that Defendant UPRR's production occurred "over a year after the scheduling conference [February 24, 2010], over a year after the Amended Discovery Order was entered [February 25, 2010], ..." clearly misstates the facts.

---

[2] Mr. Deleon is employed by Union Pacific Railroad Company and drove Mr. Boyd to the hospital on the day in question.

11. Plaintiff's First Amended Complaint also does not contain the allegations stated in Plaintiff's Motion for Sanctions. Like Plaintiff's Original Complaint, the First Amended Complaint was general in nature, alleging Defendants UPC and UPRR were negligent in: "(a) violating the Federal Employers' Liability Act; (b) failing to provide CALVIN BOYD with adequate assistance, tools and/or equipment to perform his assigned duties; (c) failing to provide competent supervision; (d) failing to promptly arrange to have CALVIN BOYD transported to the nearest hospital where he could have received safe and appropriate medical care; (e) failing to provide CALVIN BOYD with timely, appropriate and necessary medical care; (f) failing to comply with applicable company safety rules and procedures; and (g) in otherwise failing to use due care and caution under the circumstances." *See* Exhibit "E", page 3. While the First Amended Complaint does mention "company safety rules and procedures", it does not mention first aid or CPR training, and does not allege in any form or fashion a claim for "*failing to recognize symptoms and warning signs of a heart attack; failing to recognize a possible medical emergency*; and *failing to call 9-1-1 so that a fully equipped and staffed ambulance could have arrived at the scene within minutes and provide immediate care*" as Plaintiff claims in her motion.

Accordingly, Defendants were totally unaware that Plaintiff was alleging that Defendant UPRR's first aid or CPR training was relevant to the claims pled in this lawsuit. Defendants did, in good faith, produce 1480 pages of documents they believed to be relevant to whatever was intended by the general claim of "company safety rules and procedures".[3]

---

[3] Defendants produced (1) Union Pacific's General Code of Operating Rules, bates nos. UP 181-1330, (2) Union Pacific's Safety Rules, bates nos. UP 1331-1518, (3) Union Pacific's Engineering Department Safety Action Plan, bates nos. UP 1519-1571, (4) Union Pacific's Foreman's Safety Action Plan, bates nos. UP 1572-1609, and (5) Union Pacific's FRA Guide for Preparing Accident/Incident Reports, bates nos. UP 1610-1660.

12. Furthermore, even Plaintiff's contentions stated in the Joint Proposed Pretrial Order, filed one day **after** Plaintiff's Motion for Sanctions, fails to contain allegations about a failure to recognize symptoms and warning signs of a heart attack or possible medical emergency. *See* Joint Proposed Pretrial Order attached hereto as Exhibit "G" and incorporated herein by reference.

13. The variance between the allegations actually pled in Plaintiff's Original and First Amended Complaints and those the Plaintiff would have this Court believe were pled is significant as the pled claims, and not some retroactive interpretation, determine what is relevant at the time they are pled. While Local Rule CV-26(d) defines what is "relevant to the claim or defense of any party", it goes without saying that it is easier to anticipate what documents are in fact relevant to pleaded claims when those claims are specifically and clearly stated. Moreover, it is often necessary to view a party's pleadings and discovery in conjunction in order to determine the full nature of their claims. Where Plaintiff's claims are stated in general terms, not only does it require the Defendants to attempt to decipher what exactly the Plaintiff is alleging, it then creates a high burden upon the Defendants to try and anticipate every document they believe to be relevant to a claim they are uncertain the Plaintiff is actually making. Here, Plaintiff's assertion, that the first aid CPR training manual was clearly relevant to Plaintiff's pled claims, is contradicted by the fact that the claims actually pled were general in nature, open to interpretation, and wholly failed to mention *"failing to recognize symptoms and warning signs of a heart attack; failing to recognize a possible medical emergency; and failing to call 9-1-1 so that a fully equipped and staffed ambulance could have arrived at the scene within minutes and provide immediate care"* at all. *See* Exhibits "A" and "E".

**DEFENDANT'S RESPONSE AND MEMORANDUM IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**             Page 6

### B. Plaintiff Never Sought Documents in Discovery

14. Plaintiff's Motion intimates that Defendant UPRR knew or should have known of the relevance or need for production of the subject documents, however, as shown above, Plaintiff's actual pleadings failed to give notice **and** Plaintiff never requested the documents in discovery.

15. The only written discovery Plaintiff ever served on Defendant UPRR was Plaintiff's Second Request for Production to Defendants UPC and UPRR dated January 10, 2011. That request totaled one question and sought only communications between the dispatcher and occupants of Mr. Boyd's work train [4], and was answered within 11 days of receipt. Prior to that, Plaintiff served Defendant UPC, the wrong party that Plaintiff later dismissed, with Requests for Admissions, Interrogatories, and Requests for Production, but never served the same on UPRR, Mr. Boyd's employer, or requested any documents related to UPRR's first aid or CPR training.

16. And even though Defendant UPRR never received a proper discovery request, Defendants still voluntarily disclosed and produced voluminous UPRR documents relevant to safety rules and procedures, incident details, incident reports, site diagram, witness statements, as well as Mr. Boyd's UPRR medical file, earnings statements, job application, personnel file and training history.

17. Of particular importance is Mr. Boyd's training record. That training record, located in Mr. Boyd's UPRR personnel file, was disclosed and produced by non-employer UPC on March 26, 2010, prior to UPRR even being a party, and clearly indicated that Mr. Boyd received annual safety training, dating back to 1997, and took "CPR-Care Initiator Medic FI" training on February 8, 2006.

---

[4] Plaintiff's Request for Production No.1 specifically stated, "Please produce true and correct copies of all voice recordings, transcripts, memorandums, records and/or other documents evidencing any communications between the dispatcher and any or all occupants of the work train in question on December 7, 2007, the date of Calvin Boyd's heart attack and death."

*See* UP 149-153 attached hereto as Exhibit "H" and incorporated herein by reference. His record also showed that Mr. Boyd took 193 other courses all listed in Mr. Boyd's 5 page listing of training courses.

The first aid/CPR training materials were not created or published by Defendants UPC or UPRR, it was supplied by the third party contractor that taught the course. See UP 1664 attached hereto as Exhibit "I" and incorporated herein by reference.

18. Certainly, if Plaintiff thought the first aid/CPR training course and/or materials were relevant to her claims in this suit, she would have asked for it in March of 2010, and it would have been produced as it was as soon as she did ask for it.

### C. Plaintiff had Prior Notice of First Aid/CPR Training

19. Plaintiff's assertion that it was not until the deposition of Bobby Odom on March 9, 2011 that the existence of first aid/CPR training materials was "inadvertently discovered" also misrepresents the facts as Plaintiff's counsel knew, approximately a year earlier, that Mr. Boyd had safety and first aid/CPR training from Defendant UPRR, and, as of September 23, 2010, knew Mr. DeLeon had such training from Defendant UPRR, as disclosed in his deposition.

20. As previously stated, Mr. Boyd's training record clearly indicated that Mr. Boyd received annual safety training, dating back to 1997, and took "CPR-Care Initiator Medic FI" training on February 8, 2006. *See* Exhibit "H".

21. Additionally, during the deposition of Tony Deleon, taken on September 23, 2010, Plaintiff's counsel was again made aware of the existence of first aid/CPR training materials, specifically:

> Q: Okay. Did you ever receive any *first aid training* provided by Union Pacific?
> A: Only in the -- like the start of the year.
> Q: Uh huh.

| | |
|---|---|
| A: | You know, they talked about *first aid training*. You know, they'd show *films and stuff*. |
| Q: | Okay. Did you have any *first aid training* that, as part of the training, they talked about situations where an employee might have a *heart attack* so that you would know maybe the *warning signs* or the *appropriate response* that somebody like yourself as a supervisor would be called upon to do? |
| A: | Yeah, they talked about that in start-up meetings. |
| Q: | Okay. And do they kind of do that every year? |
| A: | Yes, sir. |
| Q: | And so again, that's kind of like the Rules situation. It's kind of a refresher course every year where they kind of -- |
| A: | Uh huh. (The Witness nodded his head up and down.) |
| Q: | -- go over the basics? |
| A: | Yes, sir. |
| Q: | Do you have *CPR training*? |
| A: | Yes, sir. |
| Q: | Okay. Do you have any kind of certifications for that kind of stuff? |
| A: | They have it on the PINS record.[5] |

*See* Deposition of Antonio DeLeon, pg. 23, ln. 7 - pg. 24, ln. 12 (emphasis added) attached hereto as Exhibit "J" and incorporated herein by reference. Mr. Deleon's training record showed that he took basic first aid and CPR courses, however, Mr. Deleon also took 338 training courses totaling 868.5 hours.

22. The deposition of Bobby Odom only reinforced that Plaintiff should have known of the existence of first aid/CPR training materials upon receipt of Boyd's training record, and again upon taking DeLeon's deposition, as Odom testified (1) there was a CPR course with written materials that discussed the signs, symptoms, warnings of a heart attack, (2) it was the only such course offered by UPRR, and (3) if an employee took that course you could determine it from looking at the employee's training record. Specifically, Odom testifies as follows:

Q: Do you know what safety training Mr. DeLeon would have had prior to December 3rd, 2007?

---

[5] "PINS record" refers to the Union Pacific Railroad Company Personnel File which contains the training record such as had been disclosed for Mr. Boyd.

| | |
|---|---|
| A: | I'll answer that two ways, sir. I could tell you by looking at his history exactly what he did have. |
| Q: | What would that history be called? In other words, if I wanted a copy of it, what would I ask for? |
| A: | His training record. |
| Q: | Okay. And that would tell me every training -- safety training course he's taken? |
| A: | Yes, sir. |
| ... | |
| Q: | How often is he -- we're speaking generically now, somebody in his position, how often is he taking safety related training? |
| A: | Every year. |
| ... | |
| Q: | Is it a formalized course? |
| A: | Yes. There's a number of -- lots of courses. |
| ... | |
| Q | So you would expect Mr. DeLeon to have at least one such course a year? |
| A | Oh, absolutely. |
| Q | Would he ordinarily have more than one in a year? |
| A | Yes, sir. Yes, sir. |
| Q | What -- from what number to what number would you anticipate? |
| A | I know this is not a memory exercise. |
| Q | It's not. |
| A | I'm going to fail it, but he has a safety certification course every year. |
| Q | Is that going to include CPR training? |
| A | No. |
| ... | |
| Q | What other courses would you anticipate he may have taken that would have addressed those issues? |
| A | We do our CPR medic first-aid class every other year, which is what is prescribed -- and I may get this wrong -- prescribed by Red Cross to maintain a current, valid status. So he would have had -- he would have been -- we provide that every two years. Now, we make that available for every single employee. Now, I'd have to look at Mr. DeLeon's record to see if he participated, but we expect them all to. I would not -- we have a course that is personal injury reporting that I would have to review to see if it did or not. |

*See* Deposition of Bobby Odom, pg. 70, ln. 23 - pg. 71, ln. 7; pg. 71, ln. 10 - 13; pg. 71, ln. 16 - 17; pg. 72, ln. 13 - pg. 73, ln. 1; pg. 73, ln. 17 - pg. 74, ln. 4 attached hereto as Exhibit "K" and incorporated herein by reference.

23. Also, Plaintiff's Railroad Operations and Safety expert, Terry Doyle, who was retained some time prior to October 12, 2010, was aware of the existence of training materials as he had previously

worked as a training instructor for railroad employees teaching basic first aid. During Mr. Doyle's deposition, the following was disclosed regarding Mr. Doyle's training in basic first aid and CPR instruction:

> Q: And what areas of training did you go into?
> A: I was an instructor for conductors and locomotive engineers as far as the application of the operating rules. I taught rules classes basically.
> ...
> Q: What do you remember about the Chicago North Western's emergency response plan as it existed back when you used to be an employee there?
> MR. SLOAN: Object to form.
> A: Basically we -- for conductors and engineers, part of some of the training we did at West Chicago, Illinois, which was a training center. Larry S. Provo Training Center is where I was headquartered at. And we had, what we called, just some *basic first aid*. Just information on how to start breathing and stop bleeding, to that extent. It was very critical-type stuff.
> Q: Would that have included *CPR*?
> A: We were *trained in CPR* as instructors and things of that nature, but we did not -- but we did not train our -- our trainmen and engine service folks. Basically, we would just discuss the procedures basically on how to -- if a situation came up. And, of course, that was prior to cell phone days. But we instructed them in the case of an emergency to contact the dispatcher, be governed by their instructions.
> ...
> Q: Did you have any training while you were with the FRA on how to recognize what a medical emergency was?
> A: Only to the point where I kept my certification up, the *first aid*, *CPR*, things of that nature.
> ...
> Q: Okay. Have you ever had -- you said you've had *CPR training* and you've had -- what was the other thing you said you had?
> A: Just general *first aid*, --

*See* Deposition of Terry Doyle, pg. 21, ln.15-18; pg. 22, ln. 9 - pg. 23, ln. 13; pg. 25, ln. 7 - 12; and pg. 32, ln. 9 - 12 (emphasis added) attached hereto as Exhibit "L" and incorporated herein by reference.

24. Based on the above, it is clear that the Plaintiff knew of the existence of UPRR first aid/CPR training materials prior to March 9, 2011 as (1) Plaintiff knew, as of September 14, 2009, UPRR and not UPC employed Mr. Boyd and Mr. DeLeon, (2) Plaintiff knew, as of March 26, 2010, Mr. Boyd

received safety training and CPR training from UPRR, and (3) Plaintiff knew, as of September 23, 2010, Mr. DeLeon received safety and first aid training involving teaching materials from UPRR. Additionally, as of at least October 12, 2010, Plaintiff's counsel had retained a Railroad Operations and Safety expert trained in basic first aid and CPR instruction. However, despite this prior notice, Plaintiff failed to follow up with any discovery requests for training materials or amend the pleadings to show first aid/CPR training was in fact a relevant issue. Accordingly, Plaintiff's prior notice of the existence of UPRR first aid/CPR training materials makes it hard to believe that the Plaintiff did not know to ask for those materials if she believed them to be relevant, and Plaintiff's lack of response to that notice is evidence that those materials were not relevant to Plaintiff's claims.

25. In fact, it was only recently that Plaintiff's counsel even addressed Defendant UPRR's safety training at all. One month before the discovery deadline[6], Plaintiff's counsel sent a letter requesting, for the first time, depositions of "(4) Union Pacific's corporate representative(s) most knowledgeable of Union Pacific's safety rules, regulations and programs in force and effect on the date in question; and (5) Union Pacific's person most knowledgeable of the safety training given to [Union Pacific Railroad Company employees] Frank Leone, Tony DeLeon and Roy Tabor." *See* Exhibit "N" attached hereto and incorporated herein by reference. In response, Defendants timely offered Bobby Odom, UPRR Director of Track Maintenance, Rules, Safety and Training, for deposition. However, now, because the Plaintiff waited until the eleventh hour to address this issue, Plaintiff claims to somehow have been prejudiced by Defendant UPPR's delays.

---

[6] The Agreed Amended Docket Control Order, entered July 23, 2010, set the discovery deadline for February 10, 2011. *See* Agreed Amended Docket Control Order attached hereto as Exhibit "M" and incorporated herein by reference.

26. With the exception of this alleged issue, it is undisputed that the Defendants have a history of not only complying with, but exceeding the minimum disclosure and discovery requirements. Despite not naming UPRR as a party for almost a year after being notified it was Mr. Boyd's employer, and despite serving only one written discovery request on Defendant UPRR, Defendants voluntarily disclosed and produced volumes of UPRR documents. Defense counsel worked with Plaintiff's counsel on the timely scheduling of depositions, and even reminded Plaintiff's counsel that Defendants had obtained certain medical records by deposition on written question and offered to make copies available even though Plaintiff's counsel were given the opportunity to order such records. *See* Exhibit "O" attached hereto and incorporated herein by reference. Furthermore, Defendant UPRR has never been warned, admonished or reprimanded on disclosure or discovery issues, or any issues for that matter. Clearly, Defendants' conduct does not rise to the level of bad faith or obstructiveness. *See, e.g., Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349-54 (1909).

27. In summary, Plaintiff's Motion for Sanctions should be denied for the following reasons:

   (1) contrary to what is contained in her motion for sanctions, the allegations actually pled by the Plaintiff are general in nature and failed to give notice UPRR's first aid/CPR training was an issue;

   (2) Plaintiff originally sued the wrong party and, despite being notified of that in September 2009, did not add UPRR until July 29, 2010;

   (3) Plaintiff never requested UPRR's first aid/CPR training documents in discovery though she knew of its existence since March of 2010;

   (4) Defendants voluntarily disclosed and produced UPRR documents relevant to company safety rules and procedures, among others;

   (5) Plaintiff's counsel had notice, approximately a year prior to Bobby Odom's deposition, that UPRR safety and first aid/CPR training records existed, yet failed to ever ask for them or indicate he thought they were relevant to the issues in the suit;

(6) Plaintiff's counsel had an expert as of October 12, 2010 capable of advising Plaintiff's counsel of the existence of training materials if relevant to Plaintiff's claims;

(7) Plaintiff addressed the issue of UPRR's safety training for the first time one month before the discovery deadline; and

(8) Plaintiff has suffered no real prejudice as Plaintiff has the document available for use at trial, Defendant UPRR offered to make witnesses available for a supplemental deposition, and Plaintiff's railroad expert, Terry Doyle, has had time to review, digest, and amend his report which the Court allowed.

### III.
### REQUESTED SANCTIONS EXCESSIVE

28. Should the Court determine that sanctions are warranted, which Defendant disputes, it should not grant the requested sanctions because they are more severe than necessary to promote full compliance with the rules. *See Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990).

29. Plaintiff has requested that the Court impose one or more of the following sanctions:

(1) Directing that the facts designated in the training manual, namely that Defendant's employees should have identified Mr. Boyd's symptoms as a potential heart attack and should have immediately called Emergency Medical Services, be taken as established for purposes of the action, as Plaintiff claims;

(2) Prohibiting Defendant from opposing Plaintiff's designated claims that Defendant's employees negligently failed to recognize Mr. Boyd's symptoms and warnings of heart attack, negligently failed to recognize a possible medical emergency, and negligently failed to summon emergency medical services;

(3) Striking Defendant's pled defenses, in whole or in part;

(4) Striking the testimony of Defendant's expert(s);

(5) Striking Defendant's pleadings, in whole or in part;

(6) A finding that Defendant violated the Court' Discovery Order and issuing a

like instruction to the jury;

(7) An instruction to the jury that Defendant violated its own corporate safety policy and/or guidelines and that, as a matter of law, is clear evidence of negligence by Defendant;

(8) Such other sanctions as the Court deems appropriate and necessary.

See Exhibits "C", pg. 7, and "M".

30. As shown above, Plaintiff's requested sanctions (1) and (2) should be denied as the Defendants were substantially justified in not producing the training manual earlier, and such sanctions would be unjust. See Fed. R. Civ. P. 37(b); *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). Severe sanctions should be imposed only if the adverse party has been substantially prejudiced by the party's bad conduct. *Coane*, 898 F.2d at 1032. Here, it was Plaintiff's own failure to plead the issue, serve adequate discovery, or reasonably act on prior notice that resulted in the delay. Consequently, there is no direct relationship between the alleged conduct and the sanctions sought. *See Martin*, 63 F.3d at 1263-64.

31. Plaintiff's requested sanctions (3), (4) and (5) are excessive and inappropriate. Because these sanctions prevent a resolution of claims on their merits, they are disfavored, and due-process concerns are heightened. *Brinkmann v. Abner*, 813 F.2d 744, 749 (5th Cir. 1987). The Court should deny the requests for the following reasons:

(a) Defendant's failure, if any, to disclose the first aid/CPR training manual was not willful or done in bad faith. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005); *Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 5 (2d Cir. 1997); *Coane*, 898 F.2d at 1032. As shown above, Defendant's actions were the result of Plaintiff's failure to raise the issue of Defendant's training, and not conscious withholding. Furthermore, the Plaintiff has not shown Defendant's action to be willful or done in bad faith.

(b) Defendant's failure, if any, to disclose does not threaten to interfere with the "rightful decision" of the case so that the Court can be confident that the parties will have access to the true facts. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

(c) Dismissal of the suit does not serve the public interest in the expeditious resolution of litigation; rather, dismissal will violate the public policy favoring disposition of cases on the merits. *Id*; *Coane*, 898 F.2d at 1032.

(d) Defendant's failure, if any, to disclose has not created any unmanageable delays and, therefore, will not interfere with the Court's ability to manage its docket. *See Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385 (9th Cir. 1988); *Haugen*, 427 F.3d at 738.

(e) Plaintiff has not been substantially prejudiced by Defendant's failure, if any, to disclose. *See Coane*, 898 F.2d at 1032; *FDIC v. Conner*, 20 F.3d 1376, 1381 (5th Cir. 1994)(violation of order compelling answers to interrogatories did not prejudice opposing party enough to justify striking of claims).

(f) Defendant has no prior history of noncompliance, nor warned by the Court about any noncompliance or failure to cooperate. *See Bass v. Jostens, Inc.*, 71 F.3d 237, 242 (6th Cir. 1995).

(g) While Defendant disputes that any sanctions are warranted, lesser sanctions are available. A court should not impose a severe sanction if a lesser sanction would provide an adequate deterrence. *See Coane*, 898 F.2d at 1032.

32. Plaintiff's requested sanctions (6) and (7) should also be denied as excessive and inappropriate as the Plaintiff has not shown herself to be entitled to such instructions. To be entitled to such instructions, the party seeking the instruction must show the other party had a culpable state of mind when it did not timely produce the discoverable evidence. *In re Williams*, 298 F.3d 458, 463 (5th Cir. 2002) (*citing Vick v. Texas Employment Comm.*, 514 F.2d 734, 737 (5th Cir.1975); *see also Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir.(Tex.) May 21, 2008). Such an adverse instruction is predicated on bad conduct of the defendant. *Vick*, 514 F.2d at 737. Here, Plaintiff can not make such a showing and acknowledged as much in her motion, "Plaintiff is presently unaware

of the reason why Defendant's First Aid CPR training manual was not produced until now." See Exhibit "C", pg. 6. Accordingly, Plaintiff's requested sanctions (6) and (7) should be denied

33. With respect to Plaintiff's requested sanction (8), the appropriate remedy, if any, would be to re-open discovery and allow the Plaintiff an opportunity to conduct whatever additional discovery the Court deems reasonably appropriate. Defendant UPRR has offered to make witnesses available for a supplemental deposition if that will ameliorate the problems asserted by Plaintiff in her motion, but Plaintiff's counsel has not taken advantage of that offer.

34. Additionally, Plaintiff's claim that "merely continuing this trial and allowing Plaintiff to redepose Defendant's witnesses is not sufficient; ..." is untenable as Plaintiff's intended use of such documents is no more known to the Defendants than Plaintiff's intended use of the other 1408 pages of Defendant's safety rules and procedures. Besides, what the documents say is not going to change with the passage of time.

35. Furthermore, Plaintiff's claim that a continuance is insufficient belies the fact that less than two months ago Plaintiff sought a continuance until June 27, 2011. On January 31, 2011, Plaintiff's counsel sent Defense counsel an e-mail asking to extend the trial setting for 30-60 days due to a conflict. *See* Exhibit "P". On February 7, 2011, Plaintiff filed an Agreed Motion for Continuance asking that the Court continue the case until June 27, 2011, citing Plaintiff's counsel's schedule conflicts and the parties' need to conduct additional discovery. *See* Agreed Motion for Continuance attached hereto as Exhibit "Q" and incorporated herein by reference. Additionally, Plaintiff's counsel represented that the requested continuance "is for good cause and is not merely for delay, but so that justice may be done." *Id.* Then, however, on March 15, 2011, two days prior to filing Plaintiff's

Motion for Sanctions and after Defendants produced the documents at issue, Plaintiff filed a Motion to Withdraw Agreed Motion for Continuance. Plaintiff claimed that Plaintiff's counsel's conflict was resolved, but failed to mention the previously cited need for additional discovery, presumably because it is harder to argue that a continuance is not a proper remedy when you already have one on file. *See* Motion to Withdraw Agreed Motion for Continuance attached hereto as Exhibit "R" and incorporated herein by reference.

36. Accordingly, Plaintiff's claims are without merit and the Court should deny Plaintiff's Motion for Sanctions as (1) Defendant UPRR was substantially justified in not producing it earlier, (2) sanctions would be unjust, and (3) if any remedy is necessary, limit it to whatever additional discovery the Court deems reasonably appropriate.

## IV.
## HEARING REQUESTED

37. Defendant UPRR respectfully requests a hearing and oral argument on this matter.

## V.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Defendant UPRR respectfully requests that the Court set this matter for hearing and oral argument and, upon hearing, deny Plaintiff's Motion for Sanctions and award Defendant UPRR such other and further relief to which they are justly entitled.

Respectfully submitted,

BROWN, DEAN, WISEMAN,
  PROCTOR, HART & HOWELL, L.L.P.
200 Fort Worth Club Building
306 W. 7th Street
Fort Worth, Texas 76102
Office: (817) 332-1391
Fax: (817) 870-2427


By: /s/ John W. Proctor
    John W. Proctor
    State Bar No. 16347300
    Michael L. Peck
    State Bar No. 00794434

OF COUNSEL:

Allen F. Gardner
State Bar No. 24043679
Michael E. Jones
State Bar No. 10929400
POTTER MINTON, A PROFESSIONAL CORPORATION
100 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 28th day of March, 2011, a true and correct copy of this document was sent to Plaintiff's counsel, Glen A. Perry and John D. Sloan, Jr., SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM, electronically through the ECF system in accordance with the Federal Rules of Civil Procedure.

    /s/ John W. Proctor
    John W. Proctor